# ORIGINAL

Prob 12C
(Rev. 3/95 D/HI)

## United States District Court

### for the

### DISTRICT OF HAWAII

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 09 2006

at 3 o'clock and 40 min. P M
SUE BEITIA, CLERK

U.S.A. vs. KARLA KAHAU                    Docket No. CR 00-00184HG-09

## REQUEST FOR COURSE OF ACTION
### (Statement of Alleged Violations of Supervised Release)

COMES NOW FRANK M. CONDELLO, II, PROBATION OFFICER OF THE COURT, presenting an official report upon the conduct and attitude of KARLA KAHAU, who was placed on supervision by the Honorable Helen Gillmor, sitting in the Court at Honolulu, Hawaii, on the 21st day of February 2002, who fixed the period of supervision at five (5) years and imposed the general terms and conditions theretofore adopted by the Court and also imposed special conditions and terms as follows:

1. That the defendant participate in a substance abuse program, which may include drug testing at the discretion and direction of the Probation Office.

2. That the defendant is prohibited from possessing any illegal or dangerous weapons.

3. That the defendant provide the Probation Office access to any requested financial information.

On 11/8/2004, the subject's conditions of supervision were modified by Your Honor to include the following:

4. That the defendant participate in mental health treatment at the discretion and direction of the U.S. Probation Office.

On 12/28/2004, the subject's conditions of supervision were modified by Your Honor to include the following:

5. That the defendant participate in a Community Corrections Center program such as Mahoney Hale for a period not to exceed 120 days, or until otherwise released, at the discretion and direction of the Probation Office. While in the program, the defendant shall participate in the components of the Mahoney Hale program.

Prob 12C
(Rev. 3/95 D/HI)

2

**RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT FOR CAUSE AS FOLLOWS:**

<u>Alleged Violation(s) of Supervised Release</u>

That the subject has violated the conditions of her supervised release (Probation Form 7A and Probation Form 12Bs are attached) as follows:

1. The subject failed to answer truthfully all inquiries by the Probation Officer and follow instructions of the Probation Officer, in violation of Standard Condition No. 3.

2. The subject failed to report to the Probation Officer on 12/19/2005, 1/3/2006, 1/4/2006, and 1/5/2006, in violation of Standard Condition No. 2.

3. The subject failed to submit a truthful and complete written report within the first five days of each month, for the months of October 2005 and November 2005, in violation of Standard Condition No. 2.

Based on the above, the U.S. Probation Officer recommends that a NO BAIL Warrant be issued and that the subject be brought before the Court to show cause why supervision should not be revoked.

PRAYING THAT THE COURT WILL ORDER ONE OF THE FOLLOWING COURSES OF ACTION:

[X] The issuance of a NO BAIL warrant and that the subject be brought before the Court to show cause why supervision should not be revoked.

[ ] Other

I declare under penalty of perjury that the foregoing is true and correct

Executed on January 6, 2006

FRANK M. CONDELLO, II
U.S. Probation Officer

Approved by:

TIMOTHY M. JENKINS
Supervising U.S. Probation Officer

Prob 12C
(Rev. 3/95 D/HI)

## ORDER OF COURT

THE COURT ORDERS the issuance of a NO BAIL warrant and that the subject be brought before the Court to show cause why supervision should not be revoked.

Considered and ordered this 6th day of January, 2006, and ordered filed and made a part of the records in the above case.

HELEN GILLMOR
Chief U.S. District Court Judge

'06 JAN -9 AND 55

RECEIVED
U.S. PROBATION OFFICE
HONOLULU HAWAII

Re:     **KAHAU, Karla**
        **Criminal No. CR 00-00184HG-09**
        **REVOCATION OF SUPERVISED RELEASE**

## STATEMENT OF FACTS

The subject was found guilty of Count 1: Conspiracy to Distribute and Possess With Intent to Distribute Heroin, Crystal Methamphetamine, Cocaine, and Marijuana, a Class C felony; and Count 11: Aiding and Abetting the Possession With Intent to Distribute in Excess of 50 Grams of Crystal Methamphetamine, a Class A felony. The subject was sentenced on 2/21/2002 to twenty-seven (27) months imprisonment and five (5) years supervised release. The terms for Counts 1 and 11 were to be served concurrently. The subject began her supervised release term on 4/5/2004. The special conditions are noted on page one of the petition.

**Violation Nos. 1 and 2 - Failing to Answer Truthfully all Inquiries by the Probation Officer and Follow Instructions of the Probation Officer; Failing to Report to the Probation Officer on 12/19/2005, 1/3/2006, 1/4/2006, and 1/5/2006**: While under supervision, the subject failed to answer truthfully the probation officer's inquiries and failed to follow the probation officer's instructions regarding her (1) associating with a known felon; (2) driving a motor vehicle without a valid drivers license; and (3) maintaining stable employment and residence.

With regards to the association with a known felon, the Court was notified on 11/4/2004 and 12/27/2004 that the subject was associating with convicted felon, Casey Kealoha. As the Court is aware, having been convicted of Burglary of a Residence, Ms. Kealoha was sentenced by the Honorable David Alan Ezra, U.S. District Judge, to fifteen (15) months imprisonment and three (3) years supervised release. Ms. Kealoha's supervised release began on 1/9/2004. At the time of the subject's initial processing for supervision, she disclosed that she was involved in an intimate relationship with Ms. Kealoha while they were cellmates at the Federal Detention Center in Honolulu. The subject was specifically instructed not to associate with Ms. Kealoha per the condition of her supervised release.

Despite this instruction, on 7/26/2004, our office received information that the subject was associating with Ms. Kealoha. When questioned later, the subject admitted to their ongoing association. The subject was verbally admonished for associating with a convicted felon. In response, the subject entered into a behavioral contract in which she agreed to establish her own stability and record of compliance for six (6) months while having no contact with Ms. Kealoha. After the six (6) months, our office would be willing to reconsider allowing their association.

Re:    **KAHAU, Karla**
       **Criminal No. CR 00-00184HG-09**
       **REVOCATION OF SUPERVISED RELEASE**
       **STATEMENT OF FACTS - Page 2**

On 8/2/2004, the subject divulged that on or about the first week of July 2004, she was involved in a physical altercation with Ms. Kealoha. They were questioned by the police but were not arrested. The subject was reminded of her behavioral contract and instructed to not have contact with Ms. Kealoha.

On 10/26/2004, the subject was observed associating with Ms. Kealoha (found together at subject's residence). When confronted, the subject claimed that she had ended the relationship with Ms. Kealoha as instructed but was simply having difficulty with the break up. Ms. Kealoha shared with our office that additional physical altercations, since the incident in July, had occurred. The subject was verbally admonished but offered mental health counseling to help her cope.

On 11/4/2004, the Court was informed of the subject's conduct and ordered mental health treatment. Our office reserved requesting the imposition of a sanction for the subject's violations until after she completed a mental health assessment. The subject was referred to Dr. Mary Meyers and advised once again that she was not to associate with Ms. Kealoha.

On 12/16/2004, the subject was found outside of Ms. Kealoha's residence. Ms. Kealoha was serving a sanction of five (5) months of home detention with electronic monitoring at the time of this incident for her association with the subject. The subject admitted she failed to follow the instructions of our office.

Based on the subject's continued failure to follow instructions and pattern of deceit, our office recommended the subject be placed at Mahoney Hale for a period of one hundred twenty (120) days. On 12/28/2004, Your Honor concurred and the subject's supervised release was modified accordingly. However, the subject did not enter Mahoney Hale until 1/24/2005, due to the lack of bed space at the facility.

Before entering Mahoney Hale, the subject and Ms. Kealoha continued to express an interest in getting back together. The subject was advised that our office would be willing to reconsider their association provided she participated in mental health treatment with Dr. Meyers and remained in compliance with the conditions of supervision for the next six (6) months. The subject completed her community confinement on 5/23/2005.

In June 2005, both the subject and Ms. Kealoha again requested that our office allow them to associate. Despite having knowledge that the two of them may have continued to have had contact over the past six (6) months, our office was inclined to allow them to

Re:    **KAHAU, Karla**
       **Criminal No. CR 00-00184HG-09**
       **REVOCATION OF SUPERVISED RELEASE**
       **STATEMENT OF FACTS - Page 3**

associate. Both the subject and Ms. Kealoha were gainfully employed and compliant with
the other conditions of supervision. The subject successfully completed substance abuse
counseling and remained drug free as established by random urinalysis. Additionally, the
subject continued to participate in treatment with Dr. Meyers.

On 6/28/2005, the subject and Ms. Kealoha were granted permission by our office to
associate, provided they attend couples' counseling with Dr. Meyers, fully comply with the
conditions of supervised release, and avert problems within their relationship. Follow-up
contact with Dr. Meyers indicated that the subject and Ms. Kealoha continued to make
progress in treatment, noting an overall improvement in their relationship. At this time, our
office is unaware of any additional altercations between the subject and Ms. Kealoha.
However, as a result of the circumstances outlined below, the subject was instructed to
have no further contact with Ms. Kealoha as of 12/30/2005.

The second area where the subject failed to answer truthfully and comply with the
probation officer's instructions is with respect to driving a motor vehicle without a valid
drivers license. On 12/12/2005, this officer received information from a community source
that the subject was driving a car. Because this officer was aware that neither the subject
nor Ms. Kealoha possessed a valid driver's license, an investigation ensued. A title search
revealed that the subject and Ms. Kealoha are the registered owners of a 1989 Honda
Prelude, license number NFS549. On the same date, this officer conducted an
unannounced home inspection of the subject's and Ms. Kealoha's newly established
residence. Upon arriving at the residence, the above-mentioned Honda Prelude was
observed parked in front of the residence. The subject was home and was asked if the car
parked out front was hers. The subject stated that it was not her car but belonged to her
cousin, Lillian. The undersigned asked the subject's cousin, who was present, if the car
belonged to her and she said it was her father's. This officer then disclosed to them both
that the car was registered to the subject and Ms. Kealoha. The subject admitted that she
lied about owning the car because she did not have a license. She stated that she planned
to sign the car over to her cousin's father but had not done so. Even so, the subject denied
driving the car. The subject was instructed to immediately sign the title over as planned and
to not drive the car. The subject promised to comply.

Additionally, the subject was questioned by this officer about her employment and
residence. While at the subject's home on 12/12/2005, this officer asked the subject about
her job status. The subject reported no problems and stated that she remained full-time
employed for Wal-Mart. Later that same day, this officer contacted Wal-Mart personnel to

Re:  **KAHAU, Karla**
     **Criminal No. CR 00-00184HG-09**
     **REVOCATION OF SUPERVISED RELEASE**
     **STATEMENT OF FACTS - Page 4**

check on the subject's employment.  Contrary to what the subject indicated, this officer was informed that the subject had not been to work since 12/4/2005.  The subject reportedly failed to call in and had provided no legitimate excuse for not showing up to work.  This officer was informed by Wal-Mart that the subject needed to return to work on 12/16/2005 or be terminated.

On 12/13/2005, this officer conducted an unannounced home inspection at the subject's residence.  The subject and Ms. Kealoha were home alone and the Honda Prelude was also parked in front of their residence.  The subject was again asked about the car registration and if they were driving the car.  The subject and Ms. Kealoha admitted that they had been driving the car to go to work and to buy groceries.  The subject admitted that she was the primary driver of the car and could not get a license due to outstanding traffic tickets.  The subject was reprimanded for lying to this officer on 12/12/2005 about driving the Honda Prelude.

This officer then questioned the subject as to why she had failed to report to work since 12/4/2005.  She stated that she was taking care of Ms. Kealoha who reportedly had a toothache and had several teeth pulled.  She also claimed that she had been feeling sick herself.  This officer questioned the timing and legitimacy of her excuse as she had not divulged her absence from work the day before nor had she worked out anything with Wal-Mart.  The subject was informed that Wal-Mart expected her to return to work by 12/16/2005 or she would be terminated.  This officer gave the subject instructions to return to work on 12/16/2005.  The subject was advised that she would not be required to maintain employment at Wal-Mart if she was unhappy but that she would be expected to avoid a gap of unemployment and to go from a job to a job.

On 12/14/2005, the subject and Ms. Kealoha reported to the Probation Office to further discuss their noncompliance.  Because of their admission that they had been driving a car without a license, they were given specific instructions to sign over the car and/or sell the car.  They asked to be given until 12/19/2005 to comply with this instruction and permission was granted.  Additionally, they were instructed to report to the Probation Office on 12/19/2005 to provide proof that this was done.

The subject failed to report to the Probation Office on 12/19/2005.  Subsequently, this officer contacted Wal-Mart and discovered that the subject had not returned to work as instructed.  As a result, this officer attempted to locate the subject at her residence.  Being unsuccessful, the undersigned attempted to locate the subject at her previous address, where her parents reside.  As this officer was approaching the residence by car, the subject

Re:   **KAHAU, Karla**
       **Criminal No. CR 00-00184HG-09**
       **REVOCATION OF SUPERVISED RELEASE**
       **STATEMENT OF FACTS - Page 5**

was observed driving the Honda Prelude in question. She pulled the car into the driveway of her parents' residence. The subject exited the car and stated that she was not driving the car but only moving it into the driveway in order to wash it. The subject became very belligerent when she was questioned by this officer. Asked why she failed to return to work on 12/16/2005, the subject stated that she did not have to return to work if she did not feel like it.

In a final attempt to address the subject's noncompliance, this officer and Supervising U.S. Probation Officer (SUSPO) Timothy M. Jenkins conducted an unannounced home inspection of the subject's residence on 12/29/2005. As we approached the house, we noticed the Honda Prelude parked in front. Ms. Kealoha and the subject were present at the residence. The subject immediately stated that she did not have to listen to us because our office no longer had any authority over her. She claimed that she was a member of the Hawaiian Kingdom and produced paperwork to that effect. The subject was quite belligerent during this period and stated that she could no longer work with this officer.

The subject and Ms. Kealoha were advised that if they took this stance, the matter would necessarily be addressed before the Court. Both preferred not to return to Court and wanted to resolve their noncompliance in another fashion. After some time, the subject calmed down and became more reasonable. SUSPO Jenkins inquired further about the subject quitting her employment on 12/4/2005. The subject acknowledged that she made a poor decision by quitting her job prior to finding another one. The subject claimed that her main motivation for quitting her job was because Wal-Mart would not allow the subject and Ms. Kealoha to work the same shift. She stated that it might be possible to get her old job back at Wal-Mart and she was willing to contact her manager about this. Additionally, both Ms. Kealoha and the subject agreed to no longer drive the Honda Prelude. The subject claimed that she did not change the title to the car because they lost the title at their previous address. Both were instructed to report to the Probation Office on 12/30/2005 to discuss the matter further.

Prior to this officer and SUSPO Jenkins leaving, the subject reported that she and Ms. Kealoha had been notified by the property management company that they would be evicted. The subject stated that the eviction was due to this officer contacting the owner who lives next door and also talking to neighbors about the subject. The Court should be aware that this officer has never contacted the owner of the residence where the subject and Ms. Kealoha reside.

Re:     **KAHAU, Karla**
        **Criminal No. CR 00-00184HG-09**
        **REVOCATION OF SUPERVISED RELEASE**
        **STATEMENT OF FACTS - Page 6**

Later on 12/29/2005, the undersigned contacted the management company that oversees the subject's and Ms. Kealoha's residence.  The subject and Ms. Kealoha were reportedly being evicted for the sole reason that they failed to pay their $1,100 deposit when moving into the residence.  The subject reportedly promised that the Salvation Army would be assisting them but that this was never done after several warnings by the management company.  Also, the subject reportedly informed the management company on 12/20/2005, that she and Ms. Kealoha were discharged from federal supervision after appearing in Court.

On 12/30/2005, the subject reported to our office with Ms. Kealoha and four (4) members of the Hawaiian Kingdom.  These individuals indicated that they were representing the subject and Ms. Kealoha.  This officer and SUSPO Jenkins met separately with the subject and informed her that based on her violations and continued deception, our office would be recommending that she be returned to Court for revocation proceedings.  When questioned about her statement to the management company about being discharged from supervision, the subject again stated that because she was a member of the Hawaiian Kingdom, she considered herself no longer under Probation or the Court's jurisdiction and therefore, not subject to the conditions of supervised release.  Given her violations, the subject was instructed to no longer associate with Ms. Kealoha.  Also, considering her pending eviction, the subject was instructed to call this officer daily to inform our office of her whereabouts, beginning on 1/3/2006.  To date, the subject has failed to call our office as instructed and it was established with Wal-Mart that the subject was notified by certified mail on 1/4/2006 that her employment was formally terminated.

As a final note, after the subject and Ms. Kealoha left our office on 12/30/2005, this officer contacted the Salvation Army Family Services section, the branch in charge of granting rental assistance.  The undersigned was informed that the subject and Ms. Kealoha had in fact applied for rental assistance and their application was still pending. In order to qualify for the assistance, Ms. Kealoha produced a birth certificate for one of her children and claimed that the child resided with her and the subject.  To our knowledge, the subject nor Ms. Kealoha have custody of any children and have never reported a child residing in the home.  The Salvation Army informed this officer that the subject and Ms. Kealoha were committing fraud if they falsely reported a child residing in the home in order to qualify for the rental assistance.

**Violation No. 3 - Failing to Submit a Truthful and Complete Written Report Within the First Five Days of Each Month, for the Months of October 2005 and November 2005**:  The subject is required to submit a monthly supervision report by the fifth of each month.  The subject failed to submit a report for the month of October 2005.  On

Re:  **KAHAU, Karla**
     **Criminal No. CR 00-00184HG-09**
     **REVOCATION OF SUPERVISED RELEASE**
     **STATEMENT OF FACTS - Page 7**

12/14/2005, our office received a monthly supervision report for the month of November 2005. This was nine (9) days after it was due to our office. In part C of the report, there is a section for the subject to list all vehicles owned or driven by her. The subject failed to list the 1989 Honda Prelude registered to her in the November 2005 report. It should be noted that the car title was issued to the subject and Ms. Kealoha on 10/24/2005.

From the onset of supervision, the subject has displayed a lack of candor and honesty when questioned about her compliance with the Court's orders. Despite the imposition of both correctional measures and sanctions, the subject continues to violate the conditions of her supervised release. Her recalcitrant attitude is contrary to the kind of cooperation needed to satisfactorily complete supervision. It is also concerning that the subject has stated that she no longer recognizes the authority of our office or Your Honor, and no longer considers herself under our jurisdiction. Based on her most recent lack of cooperation, failure to report to our office or return to work, and her statement that she is no longer under our supervision, it is not likely the subject will voluntarily appear for a revocation hearing. Therefore, it is respectfully recommended that the Court issue a warrant for the subject's arrest and that revocation proceedings be initiated upon her apprehension.

Respectfully submitted by,

FRANK M. CONDELLO, II
U.S. Probation Officer

Approved by:

TIMOTHY M. JENKINS
Supervising U.S. Probation Officer

FMC/dck

Re:    **KAHAU, Karla**
       **Criminal No. CR 00-00184HG-09**
       **REVOCATION OF SUPERVISED RELEASE**
       **STATEMENT OF FACTS - Page 8**


**NOTICE OF ADDITIONAL CONDITION(S) OF SUPERVISION THAT MAY WARRANT CONSIDERATION**

None.

PROB 7A
(Rev. 9/00; D/HI 7/02)

**Conditions of Probation and Supervised Release**

# UNITED STATES DISTRICT COURT

### FOR THE

### DISTRICT OF HAWAII

To:        Karla Kahau                                        Docket No.  CR 00-00184HG-09
Address:   46-140 Nona Loop
           Kaneohe, Hawaii  96744

Under the terms of this sentence, the defendant has been placed on supervised release by the Honorable Helen Gillmor, U.S. District Judge for the District of Hawaii. The defendant's term of supervision is for a period of FIVE (5) YEARS commencing upon release from confinement (4/5/04).

While on supervised release, the defendant shall not commit another federal, state, or local crime. The defendant shall not illegally possess a controlled substance.

If the judgment imposed a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervision in accordance with any Schedule of Payments set forth in the Criminal Monetary Penalties sheet of the judgment. In any case, the defendant should cooperate with the probation officer in meeting any financial obligations.

The defendant shall report in person to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons (supervised release cases only).

[✓ ]    The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.

**For offenses committed on or after September 13, 1994:**

The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment or placement on probation and at least two periodic drug tests thereafter.

[  ]    The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk of future substance abuse.

**It is the order of the Court that the defendant shall comply with the following standard conditions:**

(1)    The defendant shall not leave the judicial district without the permission of the court or probation officer;

(2)    The defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

(3)    The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

(4)     The defendant shall support his or her dependents and meet other family responsibilities;

(5)     The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training or other acceptable reasons;

(6)     The defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

(7)     The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substance, except as prescribed by a physician;

(8)     The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

(9)     The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

(10)    The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

(11)    The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

(12)    The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

(13)    As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

**The special conditions ordered by the Court are as follows:**

(1)     *That the defendant participate in a substance abuse program, which may include drug testing at the discretion and direction of the Probation Office.*

(2)     *That the defendant is prohibited from possessing any illegal or dangerous weapons.*

(3)     *That the defendant provide the Probation Office access to any requested financial information.*

↗ Upon a finding of a violation of probation or supervised release, I understand that the court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

These conditions have been read to me. I fully understand the conditions and have been provided a copy of them.

(Signed)_____  4/6/04    12/3/03
                KARLA KAHAU                         Date
                Defendant

_____          12/3/03
                LISA K.T. JICHA                     Date
                U.S. Probation Officer

PROB. 12B
(7/93)

FILED IN THE
UNITED STATES DISTRICT C
DISTRICT OF HAWAII

DEC 2 9 2004

at ___ o'clock and ___ min. ___ M.
WALTER A.Y.H. CHINN, CLERK

**United States District Court**

for the

**DISTRICT OF HAWAII**

RECEIVED
U.S. PROBATION OFFICE.
HONOLULU, HAWAII

'04 DEC 29 AIO :40

**Request for Modifying the Conditions or Term of Supervision
with Consent of the Offender**
*(Probation Form 49, Waiver of Hearing is Attached)*

Name of Offender: KARLA KAHAU            Case Number: CR 00-00184HG-09

Name of Sentencing Judicial Officer:   The Honorable Helen Gillmor
                                        U.S. District Judge

Date of Original Sentence: 2/21/02

Original Offense:   <u>Count 1</u>:  Conspiracy to Distribute and Possess With Intent to
                    Distribute Heroin, Crystal Methamphetamine, Cocaine, and
                    Marijuana, in violation of 21 U.S.C. § 846, a Class C felony

                    <u>Count 11</u>:  Aiding and Abetting the Possession With Intent to
                    Distribute in Excess of 50 Grams of Crystal Methamphetamine, in
                    violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, a Class A
                    felony

Original Sentence:   Twenty-seven (27) months imprisonment as to each of Counts 1
                     and 11, all such terms shall be served concurrently, and five
                     (5) years supervised release as to each of Counts 1 and 11, all
                     such terms shall be served concurrently, with the following special
                     conditions:  1) That the defendant participate in a substance abuse
                     program, which may include drug testing at the discretion and
                     direction of the Probation Office; 2) That the defendant is prohibited
                     from possessing any illegal or dangerous weapons; and 3) That the
                     defendant provide the Probation Office access to any requested
                     financial information.

Modification:   On 11/8/04, the Court imposed the following additional special
                condition:  4) That the defendant participate in mental health
                treatment at the discretion and direction of the U.S. Probation
                Office.

Type of Supervision:  Supervised Release     Date Supervision Commenced:  4/5/04

Prob 12B
(7/93)

2

## PETITIONING THE COURT

[✓]  To modify the conditions of supervision as follows:

5)  *That the defendant participate in a Community Corrections Center program such as Mahoney Hale for a period not to exceed 120 days, or until otherwise released, at the discretion and direction of the Probation Office. While in the program, the defendant shall participate in the components of the Mahoney Hale program.*

## CAUSE

This report serves to notify the Court of the offender's noncompliance with her conditions of supervised release. As Your Honor may recall, on 11/8/04, the Court imposed the special condition for mental health treatment for the offender. The imposition of the special condition was in response to the offender's continued association with federal offender Casey Kealoha. Ms. Kealoha pled guilty to Burglary of a Residence, a Class B felony, in U.S. District Court. Ms. Kealoha's supervised release began on 1/9/04.

During the period of 4/5/04 and 10/26/04, on at least three separate occasions, the offender was instructed to cease all contact with Ms. Kealoha. Despite this repeated instruction, on 10/26/04, during an unannounced home inspection, Ms. Kealoha was observed outside of the offender's residence. On 10/27/04, the offender reported for a three-way conference with Supervising U.S. Probation Officer Gene DeMello, Jr., and this officer to address the continued association. The mental health special condition was in response to the offender expressing difficulty in coping with the unhealthy relationship that she was involved in with Ms. Kealoha. During the 10/27/04 conference, the offender was advised that corrective action would be taken for her noncompliance; however, the corrective action would be determined subsequent to a mental health assessment. On 11/23/04, the offender complied with the mental health special condition and attended an initial assessment with a psychologist, with whom she will continue to meet. Contact with the psychologist revealed that the offender had been honest with regard to her abusive relationship with Ms. Kealoha. The psychologist also verified that the offender could benefit from mental health treatment to address relationship and self-esteem issues. The offender's next appointment with the psychologist will be in January 2005.

On 12/15/04, the offender reported to the Probation Office to address the corrective action for her noncompliance. The offender's continued association was revisited, as well as concern about the abusive nature of the relationship. The offender was advised that on-going contact with Ms. Kealoha could adversely impact both offenders' adjustments on supervision. Based on the offender's violation at that time, we were inclined to recommend that the Court impose a special condition for 60 days at a community correctional center, such as Mahoney Hale. This appeared to be an

Prob 12B
(7/93)

3

appropriate sanction to impress upon the offender the seriousness of her noncompliance.

However, on 12/16/04, during an unannounced home inspection, U.S. Probation Officer Frank M. Condello, II, observed the offender outside of Ms. Kealoha's residence. When questioned, the offender initially lied about her presence at the residence by denying that she was at Ms. Kealoha's apartment complex for the purpose of visiting with her. Upon further questioning, the offender admitted that she was there to see Ms. Kealoha.

On 12/21/04, the offender reported to the Probation Office to address her continued noncompliance. The offender reported that until 12/16/04, she had not had contact with Ms. Kealoha since the last instruction to cease contact on 10/26/04. The offender reported that on 12/16/04, she went to Ms. Kealoha's residence to inform her of her projected entry into Mahoney Hale and to ask Ms. Kealoha if there was hope for their relationship to resume once the offender completed her term at Mahoney Hale. The offender stated that she knew it was wrong, but had to know if there was potential to reunite with Ms. Kealoha in the future. The offender was reminded that she was being sanctioned for her continued noncompliance with regard to failing to follow instructions and her continued dishonesty to the U.S. Probation Office and that this would not be tolerated.

Based on the offender's continued association with Ms. Kealoha, we are recommending a 120-day placement at a community corrections center, such as Mahoney Hale. The offender will also be required to continue with mental health treatment while she is serving the community corrections placement.

Therefore, we are requesting that the Court modify the supervised release conditions and impose the aforementioned special condition. Attached is a signed Waiver of Hearing to Modify Conditions of Supervised Release. The offender agrees to the modification of the conditions of supervised release. The U.S. Attorney's Office and the offender's defense counsel have no objections to the proposed modification.

Respectfully submitted by,

LISA K.T. JICHA
U.S. Probation Officer

Approved by:

GENE DeMELLO, JR.
Supervising U.S. Probation Officer

Date: 12/27/04

Prob 12B
(7/93)

4

THE COURT ORDERS:

[✓]   The Modification of Conditions as Noted Above
[ ]   Other

HELEN GILLMOR
U.S. District Judge

12·28·04
Date

PROB 49
(5/96)

# United States District Court

### District of Hawaii

### Waiver of Hearing to Modify Conditions
### of Probation/Supervised Release and/or Extend Term of Supervision

I have been advised and understand that I am entitled by law to a hearing and assistance of counsel before any unfavorable change may be made in my Conditions of Probation and Supervised Release and/or my period of supervision being extended. By "assistance of counsel," I understand that I have the right to be represented at the hearing by counsel of my own choosing if I am able to retain counsel. I also understand that I have the right to request the court to appoint counsel to represent me at such a hearing at no cost to myself if I am not able to retain counsel of my own choosing.

I hereby voluntarily waive my statutory right to a hearing and to assistance of counsel. I also agree to the following modification of my Conditions of Probation and Supervised Release and/or to the proposed extension of my term of supervision:

[ X ]    To modify the conditions of supervision as follows:

5)    *That the defendant participate in a Community Corrections Center program such as Mahoney Hale for a period not to exceed 120 days, or until otherwise released, at the discretion and direction of the Probation Office. While in the program, the defendant shall participate in the components of the Mahoney Hale program.*

Witness: _____
LISA K.T. JICHA
U.S. Probation Officer

Signed: _____
KARLA KAHAU
Offender

_____
12/21/09
Date

PROB. 12B
(7/93)

RECEIVED

**United States District Court**

for the

'04 NOV -9 P4:03

**DISTRICT OF HAWAII**

U.S. PROBATION OFFICE
DISTRICT OF HAWAII

**Request for Modifying the Conditions or Term of Supervision
with Consent of the Offender**
*(Probation Form 49, Waiver of Hearing is Attached)*

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

NOV 0 9 2004

at 3 o'clock and 50 min. M
WALTER A.Y.H. CHINN, CLERK

Name of Offender: KARLA KAHAU          Case Number:  CR 00-00184HG-09

Name of Sentencing Judicial Officer:     The Honorable Helen Gillmor
                                         U.S. District Judge

Date of Original Sentence: 2/21/02

Original Offense:     Count 1:  Conspiracy to Distribute and Possess With Intent to
                      Distribute Heroin, Crystal Methamphetamine, Cocaine, and
                      Marijuana, in violation of 21 U.S.C. § 846, a Class C felony

                      Count 11:  Aiding and Abetting the Possession With Intent to
                      Distribute in Excess of 50 Grams of Crystal Methamphetamine, in
                      violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, a Class A
                      felony

Original Sentence:   Twenty-seven (27) months imprisonment as to each of Counts 1
                     and 11, all such terms shall be served concurrently, and five
                     (5) years supervised release as to each of Counts 1 and 11, all
                     such terms shall be served concurrently, with the following special
                     conditions:  1) That the defendant participate in a substance abuse
                     program, which may include drug testing at the discretion and
                     direction of the Probation Office; 2) That the defendant is prohibited
                     from possessing any illegal or dangerous weapons; and 3) That the
                     defendant provide the Probation Office access to any requested
                     financial information.

Type of Supervision:  Supervised Release     Date Supervision Commenced: 4/5/04

## PETITIONING THE COURT

[✓]    To modify the conditions of supervision as follows:

    *4)*    *That the defendant participate in mental health treatment at the discretion
    and direction of the U.S. Probation Office.*

Prob 12B
(7/93)

2

**CAUSE**

This report serves to notify the Court of the offender's noncompliance with her conditions of supervised release. On 7/26/04, our office received information that the offender was associating with federal offender Casey Kealoha. Ms. Kealoha pled guilty to Burglary of a Residence, a Class B felony, in U.S. District Court. Ms. Kealoha was sentenced to 15 months imprisonment and 3 years supervised release. Ms. Kealoha's supervised release began on 1/9/04.

It should be noted that on 4/5/04 during her orientation to the supervision conditions, the offender admitted that she was involved in an intimate relationship with Ms. Kealoha while they were cellmates at the Federal Detention Center in Honolulu. At that time, the offender was reminded of the supervision conditions and instructed not to have any contact with Ms. Kealoha. Despite this instruction, on 7/26/04, our office received information that the offender was associating with Ms. Kealoha. On 7/26/04, when questioned, the offender admitted to the association. However, there were discrepancies between the offender's report and Ms. Kealoha's report to U.S. Probation Officer (USPO) Frank M. Condello, II, regarding the onset and frequency of the contact. Upon further questioning, the offender admitted that she had not been truthful.

On 7/26/04, the offender was verbally admonished for failing to follow instructions, failing to provide a truthful report, and associating with a convicted felon. At this time, the offender was issued a Behavioral Contract. In the contract, the offender agreed to cease all contact with Ms. Kealoha and to begin actively seeking employment by turning in documented employment contacts on a weekly basis to the U.S. Probation Office.

It should be noted that on 8/2/04, the offender admitted that on or about the first week of July 2004, she was involved in a physical altercation with Ms. Kealoha. They were questioned by the police but were not arrested. On 8/2/04, the offender was reminded of her Behavioral Contract and instructed to avoid contact with Ms. Kealoha.

Despite the instruction to cease all contact with Ms. Kealoha, on 10/21/04, our office received information that the offender was again associating with Ms. Kealoha. On 10/26/04, this officer, Supervising U.S. Probation Officer (SUSPO) Gene DeMello, Jr., and USPO Condello conducted an unannounced home inspection at the offender's residence. Ms. Kealoha was observed outside of the offender's residence. When questioned, Ms. Kealoha admitted that they had been associating for approximately the last 3 weeks and the offender admitted that she initiated the contact with Ms. Kealoha. Ms. Kealoha also admitted that there has been continued physical altercations between them. Both were instructed to report to the Probation Office the following day and Ms. Kealoha was instructed to return home.

On 10/27/04, the offender reported as instructed. During a three-way conference with SUSPO DeMello and this officer, the offender broke down and reported that the relationship with Ms. Kealoha was over and she did not know how to cope with the situation. The offender admitted that it was not a healthy relationship, but she did

Prob 12B
(7/93)

3

not know how to stay away from Ms. Kealoha. It was recommended that the offender could benefit from mental health treatment, to which the offender agreed. The offender was advised that corrective action would be taken for her noncompliance; however, the corrective action would be determined subsequent to a mental health assessment. The Court is reminded that according to the Presentence Report, the offender previously received mental health treatment for Post Traumatic Stress Syndrome and depression.

To the offender's credit, on 9/29/04, the offender secured full-time employment at Advantage Webco. In addition, since the onset of supervision, she has submitted 21 urine specimens, all of which have been negative for any illicit drugs.

In light of the offender's current situation and due to her willingness to participate in mental health treatment, we are requesting that the Court modify the supervised release conditions and impose the aforementioned special condition. Attached is a signed Waiver of Hearing to Modify Conditions of Supervised Release. The offender waives her right to a hearing and to assistance of counsel. The subject agrees to the modification of the conditions of supervised release. The U.S. Attorney's Office has no objections to the proposed modification.

Respectfully submitted by,

LISA K.T. JICHA
U.S. Probation Officer

Approved by:

GENE DeMELLO, JR.
Supervising U.S. Probation Officer

Date: 11/4/04

PROB 49
(5/96)

# United States District Court

### District of Hawaii

### Waiver of Hearing to Modify Conditions
### of Probation/Supervised Release and/or Extend Term of Supervision

       I have been advised and understand that I am entitled by law to a hearing and assistance of counsel before any unfavorable change may be made in my Conditions of Probation and Supervised Release and/or my period of supervision being extended.  By "assistance of counsel," I understand that I have the right to be represented at the hearing by counsel of my own choosing if I am able to retain counsel.  I also understand that I have the right to request the court to appoint counsel to represent me at such a hearing at no cost to myself if I am not able to retain counsel of my own choosing.

       I hereby voluntarily waive my statutory right to a hearing and to assistance of counsel.  I also agree to the following modification of my Conditions of Probation and Supervised Release and/or to the proposed extension of my term of supervision:

[ X ]    To modify the conditions of supervision as follows:

      4)    *That the defendant participate in   mental health treatment at the discretion and direction of the U.S. Probation Office.*

Witness: _____
           LISA K.T. JICHA
        U.S. Probation Officer

Signed: _____
         KARLA KAHAU
          Offender

_____
      10/27/04
        Date